**Malcolm S. BRASSELL, Plaintiff,**

v.

**John BAKER, Defendant.**

Civ. A. No. 92–59–N.

United States District Court, M.D. Alabama, N.D.

Nov. 2, 1992.

Malcolm S. Brassell, pro se.

George B. Azar, Hugh R. Evans, III, Thomas C. Tankersley, City of Montgomery, Legal Dept., Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiff Malcolm S. Brassell, a citizen of the City of Montgomery, Alabama, filed this lawsuit because the city does not have procedures for recall elections and thus could not grant his request for a recall election in a district represented by a city council member who, according to Brassell, voted on an issue contrary to what he had led his constituency to believe that he would do. Brassell claims that the first and fourteenth amendments to the United States Constitution require that the city provide procedures for the recall election of members of the city council. He argues that, under these two amendments, all elected public officials are at all times subject to voter-initiated recall elections if, among other things, they breach promises and representations made during their campaigns. Brassell seeks enforcement of these amendments through 42 U.S.C.A. § 1983, and jurisdiction is based on 28 U.S.C.A. §§ 1331, 1343. Brassell has named only one defendant: the clerk of the City of Montgomery.

This lawsuit is before the court on the recommendation of the United States Magistrate Judge that Brassell's claim lacks merit and that summary judgment should be entered in favor of the city clerk. For the reasons given below, the court agrees.

## I.

In 1988, Billy Turner, a member of the Montgomery City Council, opposed an ordinance which provided for an annual expense allowance for council members. The council passed the ordinance but Turner refused to accept any expense allowance. In 1991, however, after Turner had won reelection in a campaign in which the ordinance was an issue, he voted to retain the ordinance and began accepting an expense allowance. Brassell responded to Turner's changed vote by gathering signatures on a recall petition and presenting the petition to the city clerk with a request that the city conduct a recall election for the district from which Turner was elected. The city clerk rejected the request on the ground that the city lacks authority to conduct recall elections. This lawsuit then ensued, and, after a brief period of discovery, the parties filed cross-motions for summary judgment.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Brassell and the city clerk agree that there are no disputed

issues of material fact and that the only issues for resolution are ones of law. Although Brassell has not expressly and clearly delineated the legal grounds for his recall-election claim, it appears from his pleadings and briefs, when all read together, that he is resting his claim on the following: the right to vote as a fundamental right embodied in the first and fourteenth amendments; the petition clause of the first amendment; and the equal protection clause of the fourteenth amendment.

### A. The Right to Vote

■ Brassell contends that the City of Montgomery's failure to provide for voter-initiated recall elections violates his right to vote under the first and fourteenth amendments. The court cannot agree.

Without question, "voting is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979). Nevertheless, the electoral process is subject to substantial regulation by government. "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Burdick v. Takushi,* — U.S. —, —, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992), *quoting Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). Indeed, for example, the United States Constitution provides that states may prescribe "The Times, Places and Manner of holding Elections for Senators and Representatives." Art. I, § 4, cl. 1.

Because "Election laws will invariably impose some burden on individual voters," *Burdick,* — U.S. at —, 112 S.Ct. at 2063, the Supreme Court has instructed lower courts to apply a "flexible standard" in determining whether a state regulation is permissible. *Id.* Under this standard, "the rigorousness of [the] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.* When "those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id., quoting Norman v. Reed,* 502 U.S. —, —, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992). However, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick,* — U.S. at — – —, 112 S.Ct. at 2063–64, *quoting Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 1569–70, 75 L.Ed.2d 547 (1983). Applying this flexible standard, this court finds that, although the City of Montgomery's electoral process does not provide for recall elections, the process does not violate the right to vote of the city's citizens.

There are two methods by which Montgomery city council members may be removed from office. First and obviously, council members are subject to periodic elections. They must run for office every four years, and city voters may remove them from office by simply not reelecting them. Second, city council members are subject to impeachment and removal for certain serious offenses: "for willful neglect of duty, corruption in office, incompetency, or intemperance in the use of intoxicating liquors or narcotics to such an extent, in view of the dignity of the office and importance of its duties, as unfits the officer for the discharge of such duties, or for any offense involving moral turpitude which in office, or committed under color thereof, or connected therewith." 1901 Ala. Const. art. 7, § 173; *see also id.* § 175. The city and State of Alabama therefore provide a reasonable and responsive process through which city voters may at any time remove an elected official for specific serious causes and may periodically remove elected officials at will.

Brassell argues that this process does not go far enough because it does not allow

voters to remove an official at any time if, as he charges Turner, that official breaks a campaign promise or representation. An effective and responsive electoral process does not require this, however. The Supreme Court has made clear that "the function of the election process is … not to provide a means of giving vent to 'short-range political goals, pique, or personals quarrel[s].'" *Burdick,* —— U.S. at ——, 112 S.Ct. at 2066, *quoting Storer,* 415 U.S. at 735, 94 S.Ct. at 1281. "Attributing to elections a more generalized expressive function would undermine the ability of States to operate elections fairly and efficiently." *Burdick,* —— U.S. at ——, 112 S.Ct. at 2066.

Therefore, although the city makes no provision for recall elections, the city provides a responsive electoral process which imposes only "reasonable, nondiscriminatory restrictions" on the first and fourteenth amendment rights of voters. *Burdick,* —— U.S. at ——, 112 S.Ct. at 2063. Under the flexible standard described above, because the imposition on the rights of voters is very limited, the burden placed upon the city to justify this process is only "slight," *id.* at ——, 112 S.Ct. at 2066: the city "need not establish a compelling interest to tip the constitutional scales in its direction," *id.,* and any legitimate "important regulatory interests" the city might have in its electoral process are sufficient to justify the restrictions. *Id.* at ——, 112 S.Ct. at 2063. It is evident that the reasoning behind the city's electoral process is the compromised belief that terms of more than four years would allow elected officials to serve too long without being held directly accountable to the electorate, while terms of less than four years would be too destabilizing. With the assurance of at least four-year terms, elected officials are given the opportunity to make forward-looking decisions which may be unpopular at the moment but which elected officials believe the citizenry will eventually come to realize are in their best interest in the long run. Similarly, under a system with elections only every four years, voters will be carried away less by transitory impressions and focus more an elected official's overall

record. These interests are sufficiently legitimate and important to outweigh the limited burden that the absence of election-recall procedures imposes upon voters under the City of Montgomery's electoral scheme. *See, e.g., Burdick, supra* (the State of Hawaii's failure to provide for the casting of write-in votes does not violate the right to vote under the first and fourteenth amendments). The City of Montgomery's failure to provide for voter-initiated recall elections does not violate the right to vote under the first and fourteenth amendments.

### B. The Petition Clause

■ Brassell claims next that the City of Montgomery's failure to provide for recall elections violates the petition clause. The first amendment guarantees "the right of the people … to petition the Government for a redress of grievances." U.S. Const. amend. I. Recently, the Supreme Court reaffirmed the continued independent vitality of the petition clause. According to the Court, the clause means "that people 'may communicate their will' through direct petitions to the legislature and government officials." *McDonald v. Smith,* 472 U.S. 479, 482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985), *quoting* 1 Annals of Cong. 738 (1789), and thus the right embodied in the clause "is implicit in '[t]he very idea of a government, republican in form.'" *McDonald,* 472 U.S. at 482, 105 S.Ct. at 2789, *quoting United States v. Cruikshank,* 2 Otto 542, 552, 92 U.S. 542, 552, 23 L.Ed. 588 (1875). The Court explained the clause's historical roots, which "long antedate the Constitution," *McDonald,* 472 U.S. at 482, 105 S.Ct. at 2790, as follows:

"In 1689, the Bill of Rights exacted of William and Mary, stated: "[I]t is the Right of the Subjects to petition the King." 1 Wm. & Mary, Sess. 2, ch. 2. This idea reappeared in the Colonies when the Stamp Act Congress of 1765 included a right to petition the King and Parliament in its Declaration of Rights and Grievances. See 1 B. Schwartz, The Bill of Rights—A Documentary History 198 (1971). And the Declarations of Rights enacted by many state conven-

tions contained a right to petition for redress of grievances. *See, e.g.,* Pennsylvania Declaration of Rights (1776)." *Id.* at 482–83, 105 S.Ct. at 2790. The first amendment's right to petition, as described by the Court, is "cut from the same cloth as the other guarantees of that Amendment," and is thus "an assurance of a particular freedom of expression." *Id.* at 482, 105 S.Ct. at 2789.

Under this traditional view of the petition clause as securing the right to submit petitions to legislatures and government officials, Brassell's right has not in any way been impaired. He was, and is, fully able, without governmental reprisal, to express his views on the City of Montgomery's expense allowance ordinance to all elected city officials, including Turner. Brassell argues, however, that the petition clause goes further than this and gives him and all other citizens of the City of Montgomery the affirmative and absolute right to subject Turner at any time to a recall election if they obtain a "sufficient" number of signatures on a recall petition.[1] The express language of the petition clause does not suggest this reading, and all historical and legal writings the court has uncovered suggest only the traditional view described above. The court therefore concludes that the petition clause does not give an individual citizen the unqualified right to require that an elected official submit to a recall vote.

Brassell further suggests that, if the clause does not afford an absolute right to voter-initiated recall elections, it at least places on government the responsibility to fashion an electoral system in which those elected can be held directly and periodically accountable to voters. Although this interpretation of the petition clause may be novel and without any historical basis, the court need not reject it as a matter of law. Assuming that the clause could be interpreted to go beyond merely assuring citizens open and uninhibited channels

through which to communicate their political grievances and to include, in addition, a directive placing upon government the affirmative responsibility to fashion a responsive electoral system, the City of Montgomery has not breached this responsibility. As the court has already explained, although neither state nor local law makes provision for recall elections, the city provides a reasonable and responsive electoral process through which voters may at any time remove an elected official for specific serious causes and may periodically remove elected officials at will. This process, under which elected officials are directly and periodically accountable to voters, does not violate the petition clause.

C. The Equal Protection Clause

■ Finally, Brassell contends that the City of Montgomery's failure to provide for recall elections violates the equal protection clause of the fourteenth amendment because another Alabama municipality, the City of Dothan, allows such elections. The court must reject this claim for two reasons. First, the Alabama courts recently struck down the state law which allowed the City of Dothan to conduct recall elections.[2] Therefore, both the City of Dothan and the City of Montgomery do not allow recall elections. Second, even if state law provided that Dothan could conduct recall elections while Montgomery could not, there would be no violation of the equal protection clause. The "unequal application [of the law] to those who are entitled to be treated alike[ ] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination" based upon such factors as race, religion, national origin, or poverty. *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); *see also E & T Realty v. Strickland,* 830 F.2d 1107, 1112–14 (11th Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). Brassell has not even alleged such discrimination.

---

1. Brassell does not say how many voter signatures the petition clause, as he interprets the clause, requires that a person obtain before he or she may subject an elected official to a recall election.

2. *City of Dothan v. Coleman,* No. 92–5008 (Circuit Court of Houston County, Ala. March 11, 1992).

### III.

This court should not be understood as suggesting that the City of Montgomery and the State of Alabama are not free to amend their laws and, if necessary, the state constitution to provide for the election recall of public officials, nor should the court be understood as discouraging the city and the state from providing for such provisions.[3] Today, this court holds merely that the federal constitutional provisions upon which Brassell relies do not require that the City of Montgomery provide for voter-initiated recall elections in light of the overall electoral process open to the city's citizenry.

An appropriate judgment will be entered.

---

**3.** The city clerk has argued that the Alabama Constitution does not allow recall elections. *Williams v. State of Alabama ex rel. Schwarz,* 197 Ala. 40, 72 So. 330, 331 (1916) (under § 175 of the Alabama Constitution of 1901, "an incumbent cannot be removed from office during the term for which he is elected, by recall or otherwise, except by the mode and in the manner, and for the causes, fixed in the constitutional provisions"); *see also Birmingham v. Graffeo,* 551 So.2d 357, 362 (Ala.1989) (per curiam) (discussing § 175).