P.O.P.S., a Washington non-profit
corporation, Plaintiff–
Appellant,

v.

Booth GARDNER, Governor, State of
Washington; Richard Thompson, Secre-
tary, Washington Department of Social
& Health Services; Washington State
Office of Support Enforcement, Defen-
dants–Appellees.

No. 91–36118.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1993.

Decided July 29, 1993.

Steve W. Berman, Betts, Patterson & Mines, Seattle, WA, for plaintiff-appellant.

Kathryn L. Kafka, Daniel Radin, Asst. Attys. Gen., Seattle, WA, for defendants-appellees.

Before: FARRIS, FERGUSON, and D.W. NELSON, Circuit Judges.

FARRIS, J., Circuit Judge:

Parents Opposed to Punitive Support challenged the constitutionality of the Washington State Child Support Schedule. The district court granted the State's motion for summary judgment. The court ruled that the Schedule did not violate the Equal Protection or the Due Process Clauses of the Fourteenth Amendment.

We affirm.

## FACTS

Congress has mandated that each state develop presumptive child support guidelines. *See* 42 U.S.C. § 667(b) (1988). Governor Booth Gardner created an Executive Task Force in June 1985 to investigate Washington state's child support program. The Task Force issued a final report in September 1986 recommending that the State adopt a presumptive child support schedule. After numerous public hearings and meetings, the Child Support Schedule Commission presented a schedule to the Legislature which it passed into law.

The Schedule is used to determine the amount of child support parents must pay upon divorce. The economic table, one of five parts of the Schedule, sets forth the basic child support obligation based on the combined family net income and number of children. The table operates similarly to a tax table, mandating different support levels at different income levels. The basic support obligation is allocated between the parents based on each parent's share of the family's net income.

The Schedule permits deviations from the presumptive support obligation, but requires written findings of fact to explain any such deviation. Wash.Rev.Code § 26.19.035(2). Several bases for deviation are enumerated: wealth, income of other adults in the household, liens or extraordinary debt, child support or maintenance received or paid, children from other relationships, and nonrecurring income. *Id.* at § 26.19.075. The court may also deviate if the child spends a significant amount of time with the obligated parent. *Id.* at § 26.19.075(1)(d). The Washington Supreme Court has held that the enumerated reasons for deviation are not exclusive. *In re Marriage of Booth,* 114 Wash.2d 772, 791 P.2d 519, 521 (1990).

P.O.P.S. challenges the constitutionality of the Schedule, claiming that it violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. P.O.P.S. also claims that the Schedule's economic table creates an irrebuttable presumption that violates the plaintiffs' right to procedural due process.

## DISCUSSION

### I. REBUTTABILITY OF THE CHILD SUPPORT SCHEDULE

P.O.P.S. argues that parents cannot rebut the basic support obligation, because the State has not revealed the assumptions underlying the economic table. By "assumptions", P.O.P.S. means the individual cost components of the table. P.O.P.S. contends that because the cost components of the economic table are incapable of being discovered, parents cannot demonstrate that the table under- or overstates their basic support obligation. P.O.P.S. argues, for example, that noncustodial parents cannot demonstrate that the economic table overestimates housing costs for their child, because they cannot determine what percentage of their basic support obligation is assumed to be housing costs.

The district court held that the Schedule, including the economic table, is rebuttable and that only equity constrained the judge's authority to deviate. The State presented two surveys that purport to show that one out of five support orders deviate from the presumptive support level. P.O.P.S. recognizes that the courts can deviate from the Schedule, but argues that parents cannot obtain a deviation by arguing that the economic table does not accurately reflect their child rearing expenses. P.O.P.S. maintains that the surveys do not show that any litigants have obtained a deviation by attacking the assumptions underlying the economic table.

P.O.P.S. introduced declarations from economists, practitioners and judges, stating that in practice the economic table is irre-

buttable. They testify that courts simply will not consider the argument that individualized child care costs differ from those assumed by the economic table, because they do not know the underlying assumptions of the table. On summary judgment, we must construe the evidence in favor of the nonmoving party. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989). Although there is strong evidence to the contrary, we assume *arguendo* that the economic table is irrebuttable.[1]

■ "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). P.O.P.S. does not deny that the State has the authority to require divorced parents to provide for their children, rather, P.O.P.S. maintains that the requirements of procedural due process prevent the State from ordering its members to pay child support without affording them an opportunity to demonstrate that the award does not reflect the "actual" cost of rearing their particular child. P.O.P.S. opines broadly that the Supreme Court has long disfavored irrebuttable presumptions. But not all so-called irrebuttable presumptions are unconstitutional. *See, e.g., Michael H. v. Gerald D.*, 491 U.S. 110, 119, 109 S.Ct. 2333, 2339–40, 105 L.Ed.2d 91 (1989); *Weinberger v. Salfi*, 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975).

In *Michael H.*, the Supreme Court upheld a California law that conclusively presumed that a child born to a married woman living with her husband is the child of the husband. *Michael H.*, 491 U.S. at 113, 109 S.Ct. at 2336–37. Based solely on the legal presumption, the State declared that the husband of the child's mother was the child's father, despite blood tests that showed a ninety-eight percent probability that another man was the child's natural father. The natural

father claimed that the presumption violated his right to procedural due process, because it terminated his liberty interest in his relationship with his child without affording him an opportunity to demonstrate his paternity in an evidentiary hearing. *Id.* at 119, 109 S.Ct. at 2339–40. The Court rejected his procedural due process claim, finding that the presumption was a substantive rule of law which must be reviewed for fundamental fairness. *Id.* at 121, 109 S.Ct. at 2340–41.[2]

Similarly, the economic table is the implementation of a substantive rule of law. *See Id.* at 119, 109 S.Ct. at 2339–40. P.O.P.S.'s contention that parents cannot demonstrate that the economic table overstates their actual child-rearing costs misses the point. The table does not purport to provide merely for the child's subsistence, rather it is designed to sustain the child at a standard of living concomitant with her divorcing parents' income. The measure of that standard is subjective. Washington state declares it to be irrelevant whether the noncustodial parent actually spent less than the amount indicated in the economic table to support her children before divorce; the table tells parents what they ought to spend. To the extent that the presumption is conclusive, it is a substantive rule of law based upon a determination by the Legislature as a matter of social policy, that divorcing parents will be required to sustain their children at a certain standard of living determined by the parents' income. *See Id.* at 119, 109 S.Ct. at 2339–40. We reject P.O.P.S.'s procedural due process challenge and proceed to its substantive claim. *See id.* at 121, 109 S.Ct. at 2340–41.

## II. SUBSTANTIVE DUE PROCESS

■ The rights to marry, have children, and maintain a relationship with one's children are fundamental rights protected by the Fourteenth Amendment's Due Process Clause. *See Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972) (children); *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823–24, 18 L.Ed.2d

---

1. To be clear, we are not assuming that the entire Child Support Schedule is irrebuttable, for as P.O.P.S. recognizes, the Statute plainly authorizes the court to deviate from the Schedule.

2. The Court also rejected his substantive due process claim. *Id.* at 129, 109 S.Ct. at 2345.

1010 (1967) (marriage). Statutes that directly and substantially impair those rights require strict scrutiny. *See Zablocki*, 434 U.S. at 387, 98 S.Ct. at 681. According to P.O.P.S., the financial pressures created by the Schedule alienate noncustodial parents from their children, cause divorces between noncustodial parents and their new spouses, deter new marriages, and prevent noncustodial parents from having more children with their new spouses. P.O.P.S. argues that because the Schedule impacts family relationships, we should apply strict scrutiny to the Schedule. We reject the argument.

■ In *Zablocki v. Redhail*, 434 U.S. 374, 375, 98 S.Ct. 673, 675, 54 L.Ed.2d 618 (1988), the Supreme Court applied strict scrutiny to a state statute that forbade noncustodial parents who had child support obligations from marrying without obtaining court permission. Any marriage entered into without compliance with the statute was void and the persons acquiring illegal marriage licenses were subject to criminal penalties. *Id.* P.O.P.S.'s reliance on *Zablocki* is misplaced. Unlike the statute in *Zablocki*, the Schedule does not directly interfere with family relationships. The Schedule does not bar noncustodial parents from entering or maintaining family relationships. In fact, the Statute employs the method for enforcing child support orders that the Court approved in *Zablocki*—adjusting award criteria. *See id.* at 390, 98 S.Ct. at 683. Some noncustodial parents may feel discouraged from getting married because of obligations to their own children but nothing in the Statute limits or restricts remarriage:

> By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.

*Id.* at 386, 98 S.Ct. at 681 (citations omitted); *see also Califano v. Jobst*, 434 U.S. 47, 54, 98 S.Ct. 95, 99–100, 54 L.Ed.2d 228 (1977).

P.O.P.S. argues that the Schedule results in child support orders that are so high that they effectively bar some noncustodial parents from getting remarried. P.O.P.S. cites anecdotal evidence from several noncustodial parents who claim to have had marital difficulties because of their child support obligation, but all of those parents did remarry despite alleged financial pressures. The Schedule does not directly and substantially interfere with marriage. *See Zablocki*, 434 U.S. at 387 n. 12, 98 S.Ct. at 681 n. 12 (citing *Califano v. Jobst*, 434 U.S. 47, 48, 98 S.Ct. 95, 96, 54 L.Ed.2d 228 (1977)). Moreover, if a noncustodial parent could show that he was so burdened by his child support obligation that he could not get married, the court would have the authority to deviate from the presumptive award on that basis. *See* Wash. Rev.Code §§ 26.19.075(1)(c), (e) and (4). Such a claim would not require the parent to rebut the assumptions underlying the economic table, and therefore, P.O.P.S.'s challenge to the economic table is irrelevant to whether the Schedule is constitutional. The Schedule provides that neither parent's total child support obligation may exceed forty-five percent of net income, further diminishing the likelihood that excessive awards will prevent marriage. *Id.* at § 26.19.065(1).

■ P.O.P.S. also asserts that noncustodial parents are so frustrated by the operation of the Schedule that they do not spend as much time with their children. The fact that some parents take their financial frustrations out on their children does not afford them extra protection under the Due Process Clause. The Schedule does not discourage parents from spending time with their children. It explicitly permits courts to deviate from the presumptive support level if the noncustodial parent spends a "significant amount of time" with his children. *Id.* at § 26.19.075(d).

The burden of child support awards may very well discourage some people from having additional children and may discourage some from entering new marriages. But all financial obligations impact family decisions. Providing financial and emotional support is the responsibility one assumes by choosing to have children. Every obligation imposed by

the State cannot be subject to strict scrutiny. Such a holding would turn the doctrine of strict scrutiny "into a virtual engine of destruction for countless legislative judgments which have heretofore been thought wholly consistent with the Fifth and Fourteenth Amendments to the Constitution." *Weinberger,* 422 U.S. at 772, 95 S.Ct. at 2470.

■ The judgment of the legislature must stand if there is a rational relationship between the operation of the Schedule and the policy that the Schedule serves. *See Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975). The Legislature intended to accomplish three goals by creating a statewide child support schedule:

(1) Increasing the adequacy of child support orders through the use of economic data as the basis for establishing the child support schedule;

(2) Increasing the equity of child support orders by providing for comparable orders in cases with similar circumstances; and

(3) Reducing the adversarial nature of the proceedings by increasing voluntary settlements as a result of the greater predictability achieved by a uniform statewide child support schedule.

Wash.Rev.Code § 26.19.001. P.O.P.S. recognizes that these are legitimate state interests, but argues that the Schedule is not a rational means of achieving the goals. We cannot agree. Requiring judges to follow the table unless they articulate a good reason to deviate decreases the likelihood that individual judges will erroneously award insufficient support. Because the most important factors for setting support are income and number of children, similarly situated people will pay similar amounts for child support. The presumptive nature of the table promotes voluntary settlements as the parties have fewer issues about which they can argue. Thus, adopting a presumptive support schedule is a rational means of achieving the State's legitimate goals.

■ P.O.P.S. contends that the State's methodology for developing the economic table inflated the presumptive child support level above the actual costs of rearing children in Washington. P.O.P.S. discusses at length several perceived flaws in the table. The discussion serves only to prove that the appropriate level of child support is a debatable issue dependent on policy and value judgments. On issues of social policy, the state has the power to make such judgments as long as they are not made arbitrarily. *See Weinberger,* 422 U.S. at 772, 95 S.Ct. at 2470. The table was developed based on economic studies and hard data. The presumptive support levels are not arbitrary.

### III. EQUAL PROTECTION

P.O.P.S. argues that the Schedule violates the equal protection rights of the children of noncustodial households. The Statute provides that the child support schedule shall be applied to determine the presumptive support. Children from other relationships are not to be counted to determine the basic support obligation. However, the court may deviate from the basic support obligation if either parent has children from other relationships to whom she owes a duty of support. *Id.* at § 26.19.075(1)(e). The Schedule explicitly permits the court to consider children from the noncustodial household. P.O.P.S. contends that the Equal Protection Clause dictates stricter guidelines for the consideration of noncustodial children. The Fourteenth Amendment does not mandate the rigid social policy prescriptions urged by P.O.P.S.

In *Lipscomb v. Simmons,* 962 F.2d 1374 (9th Cir.1992) (*en banc* ), we upheld an Oregon statute that provided aid to foster parents who were not related to their foster children, but denied state aid to foster parents who were related to their foster children. *Id.* at 1376. We held that because the law did not affect a suspect class or directly interfere with a fundamental right, it need only have a rational basis. We held further that we "need not ascertain the actual reason for the classification but may consider any facts from which the state reasonably could have concluded that the challenged classification would promote a legitimate state purpose." *Id.* at 1380.

■ Children of noncustodial parents do not constitute a suspect class. *See id.* at

1378. The schedule does not directly and substantially interfere with fundamental rights. *See Califano,* 434 U.S. at 54, 98 S.Ct. at 99–100; *see also Lipscomb,* 962 F.2d at 1379 (holding that the government has no affirmative obligation to facilitate the exercise of constitutional rights). We review the Schedule under the rational basis test.

■ P.O.P.S. maintains that the state does not have even a rational basis for "discriminating" against children of noncustodial households. The Schedule does not discriminate. Courts may deviate from the basic support obligation when either parent has other children. Thus the court can insure that children from noncustodial families are not unduly burdened by the child support award. The State presented evidence that the most frequent reason for deviating is the existence of other children. P.O.P.S. complains that the Schedule does not give the court any guidance for deviating from the presumptive amount based on other children. The State need not create a perfect Schedule; it need only have a rational basis for the statute:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

*Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (citations omitted).

The divorcing parents are jointly responsible for the presumptive support amount, and therefore, it is rational for the presumptive support calculation to include only the children for whom both divorcing parents have responsibility.

We have carefully examined all of P.O.P.S.'s constitutional challenges. They find no support in the Constitution.

Affirmed.