Brenda A. PARKS, Plaintiff,

v.

CITY OF WARNER ROBINS, GA., et al., Defendants.

Civ. A. No. 92–146–3–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

Jan. 14, 1994.

Linwood Robert Lovett, J. Douglas Cowart, Macon, GA, for plaintiff.

J. Lewis Sapp, Jean M. Powers, Stanford Glenn Wilson, Atlanta, GA, for City of Warner Robins, GA., defendants.

### ORDER

OWENS, Chief Judge.

Before the court is defendants' motion for summary judgment. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

### FACTS

On August 27, 1984, plaintiff Brenda Parks began work as a police officer for the City of Warner Robins Police Department. Subsequent to plaintiff beginning work as a police officer, the mayor and city council of Warner Robins introduced a measure to amend the city's anti-nepotism policy. Section 18–38 of the Warner Robins City Code provides:

This article may be repealed or amended by the mayor and council by passage of an appropriate amending or repealing ordinance. The amending or repealing ordinance may not be adopted until the following procedure has been followed:

**1208**

A proposed repealer or amendment shall be read in a regular council meeting at least two (2) weeks before action can be taken. Only after this procedure has been completed, may the mayor and council adopt the proposed amending or repealing ordinance.

Warner Robins, Ga., Code § 18–38 (1977). In accordance with this section, the proposed ordinance was first read on February 19, 1985. Approximately a month later, on March 18, 1985, the mayor and city council officially adopted the proposed anti-nepotism policy as a city ordinance.[1]

In October of 1989, plaintiff, who by this time had been promoted to sergeant in the Criminal Investigations Division, received a proposal of marriage from A.J. Mathern, a captain in the Special Investigations Unit of the Warner Robins Police Department.

Both plaintiff and Mathern hold supervisory positions with the police department. After the marriage proposal, Mathern met with Chief of Police George Johnson to discuss the effect the anti-nepotism policy would have on the employment status of plaintiff and Mathern. Chief Johnson informed Mathern that under the terms of the policy, if plaintiff and Mathern were married while in their current employment situations, plaintiff's employment would be terminated as the least senior employee. As a result of this discussion, plaintiff and Mathern postponed their plans to marry. On March 31, 1992, plaintiff filed suit against the City of Warner Robins, the city council[2], and the mayor, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201. Plaintiff contends that the anti-nepotism policy of the City of Warner Robins violates her right of

1. The policy provides:

Sec. 18–3. Anti-nepotism.
(a) *Definitions.* ''Relative' is defined to include spouse, child, stepchild, grandchild, parent, grandparent, brother, sister, half-brother, half-sister, uncle, aunt, niece, nephew, or the spouse of any of them. These relationships shall include those arising from adoption. Persons who are common law married or who are living together without the benefit of matrimony are also considered as relatives under the intent of this rule. ''Personnel actions'' include, but are not limited to, promotions, pay raises, transfers, duty assignments, and disciplinary matters.
(b) *Relatives of elected officials and department directors.* Relatives of elected officials, department directors appointed by the mayor, the city attorney, the judge of the municipal court, the city marshall-management assistant, and members of special boards or commissions authorized by statute, Charter, or ordinance and appointed by the mayor and council are excluded from employment in any department in the city.
(c) *Relatives of mayor and staff, purchasing and personnel department employees.* Relatives of the mayor, the mayor's staff, and employees of the purchasing and personnel department are not eligible for employment in any department of the city. In no instance will relatives of employees in other departments in the city be hired into such departments.
(d) *Relatives of supervisory employees.* Relatives of employees in positions that carry any degree of supervision shall not be employed anywhere in the department in which the supervisor works, but may be employed in other departments of the city.
(e) *Relatives of nonsupervisory employees.* Subject to the foregoing provisions, relatives of nonsupervisory employees may be employed by the city in any position which they are qualified to fill.
(f) *Employee transfers.* The limitations regarding the employment of relatives specified in this section also apply to the transfer of an employee into a department where supervisory relatives are employed.
(g) *Employees who become related subsequent to employment.* The limitations on employment of relatives specified in this section shall apply to the continued employment of persons who become relatives subsequent to their employment by the city due to their getting married to each other. If an appropriate transfer cannot be arranged, the less senior employee will be terminated.
(h) *Subsequent elections or appointments.* Employees who are already related at the time of the adoption of this section; or who would be in violation of this section upon the election or appointment of a relative to an elected or appointed supervisory position; or who became related subsequent to their employment on account of the marriage or adoption of some other person; may continue their employment subject to the following conditions:
(1) Elected officials may not participate in or vote upon any specific individual personnel actions involving a relative.
(2) Department directors and supervisors shall transfer any relative (other than those already employed on the effective date of this section) to a different division or section as to avoid any direct supervision and shall not participate in any personnel actions involving a relative.
(i) This section shall be effective March 18, 1985. Warner Robins, Ga., Code § 18–3.

2. Plaintiff has voluntarily dismissed the city council as a party defendant.

association as guaranteed by the First and Fourteenth Amendments, her procedural and substantive due process rights under the Fourteenth Amendment, and her rights under the Equal Protection Clause of the Fourteenth Amendment. Defendants have moved for summary judgment on statute of limitations grounds, on the issues of absolute and qualified immunity, and on all of plaintiff's constitutional claims.

## DISCUSSION

### I. Statute of Limitations

The Federal Declaratory Judgment Act provides, in part:

> In a case of actual controversy *within its jurisdiction* ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). The Declaratory Judgement Act is not an independent basis for federal court jurisdiction. *See Wendy's Intern., Inc. v. City of Birmingham,* 868 F.2d 433, 435 (11th Cir.1989); *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir.1980). Before declaratory relief is available pursuant to § 2201(a), an independent basis for federal jurisdiction must be established. *Wendy's Intern., Inc.,* 868 F.2d at 435; *Jones,* 609 F.2d at 781; *Commercial Metals Co. v. Balfour, Gutherie, & Co.,* 577 F.2d 264, 268 (5th Cir.1978). Defendants contend that because the statute of limitations has run on plaintiff's 42 U.S.C. § 1983 cause of action, this court has no other independent basis for federal jurisdiction and, therefore, may not grant declaratory relief.

Because federal law does not provide a statute of limitations for § 1983 claims, federal courts are required to borrow a period of limitation from state law. It is well established that a § 1983 action brought within Georgia is subject to a two-year statute of limitations adopted from O.C.G.A. § 9–3–33. *Mullinax v. McElhenney,* 817 F.2d

711, 715–16 (11th Cir.1987). Although state law determines the applicable period of limitation, federal law determines when the § 1983 cause of action accrues. *Mullinax,* 817 F.2d at 716.

Plaintiff is faced with a situation in which she has been expressly informed by defendants that if she marries, her employment with the City will be terminated. To suggest that her cause of action accrued in 1987 and expired in 1989, would effectively bar plaintiff from seeking relief from this court while allowing the threat of termination to remain. The threat exists so long as plaintiff harbors a desire to marry. Accordingly, the court holds that plaintiff's cause of action continues to accrue so long as the threat of immediate application of the policy exists. Defendants' motion for summary judgment on the issue that plaintiff's action is barred by the statute of limitations is **DENIED.**

### II. Absolute Immunity

In their motion for summary judgment, defendants also assert that the mayor and city council members sued in their individual capacities are entitled to absolute immunity for the performance of their legislative functions. "Local legislators are entitled to absolute immunity from liability for actions taken in furtherance of their official duties." *Finch v. City of Vernon,* 877 F.2d 1497, 1505 (11th Cir.1989). "[N]o immunity[, however] exists for actions outside the sphere of legitimate legislative activity." *Espanola Way Corp. v. Meyerson,* 690 F.2d 827, 829 (11th Cir.1982). Section 2–203 of the Warner Robins City Charter provides that the mayor and city council have the authority to "[a]dopt ordinances establishing any personnel policies it deems necessary for an adequate and systematic handling of personnel affairs...[.]" Warner Robins, Ga., Charter § 2–203. Clearly, the actions of the mayor and the city council in enacting this ordinance were taken in furtherance of their official duties as set forth in the city charter. The mayor and the city council, therefore, are entitled to absolute immunity from any liability that may arise as a result of the passage of this ordinance. Accordingly, de-

fendants' motion for summary judgment on the issue of absolute immunity for the mayor and city council in their individual capacities is **GRANTED.**[3]

### III. Qualified Immunity

The Eleventh Circuit Court of Appeals has adopted an objective-reasonableness test for determining whether a government official is entitled to qualified immunity. *See Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir. 1991); *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). "The objective-reasonableness test provides qualified immunity protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Courson,* 939 F.2d at 1487. "Eligibility for this immunity is determined on an objective basis and not on the basis of the officer's subjective beliefs." *Acoff v. Abston,* 762 F.2d 1543, 1549 (11th Cir.1985).

▮▮▮▮ The objective reasonableness test involves a two-step process. First, the defendant must show that " 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson,* 939 F.2d at 1487. If the defendant is able to meet this burden of production, the burden then shifts to the plaintiff to show that the defendant's actions violated clearly established constitutional law. *Id.* The second prong of the test is further divided into two subparts. First, the court must determine if the applicable law was clearly established at the time the action occurred. *Id.* at 1487–88. Second, if the law was clearly established, the court must determine if there is a genuine issue of material fact concerning whether defendant violated this law. *Id.* at 1488. Under this analysis, the defendant is entitled to qualified immunity if either (1) the law was not clearly established, or (2) the law was clearly established but the defendant did not violate the law. *Id.* n. 14.

#### A. Scope of Discretionary Authority

▮▮▮▮ A government official proves that he acted within the scope of his discretionary authority by showing " 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Id.* at 1487 (quoting *Rich,* 841 F.2d at 1564). As previously discussed, section 2–203 of the Warner Robins City Charter provides that the mayor and city council have the authority to "[a]dopt ordinances establishing any personnel policies it deems necessary for an adequate and systematic handling of personnel affairs …[.]" Warner Robins, Ga., Charter § 2–203. Clearly, the actions of the mayor and city council in adopting an anti-nepotism policy were well within the scope of their discretionary authority.

#### B. Clearly Established Law

▮▮▮▮ Plaintiff asserts that it is a well established principle of law that anti-nepotism policies infringe on rights protected by the First and Fourteenth Amendments to the United States Constitution. This contention, however, is without merit. The law regarding the constitutionality of anti-nepotism policies is far from "clearly established." Plaintiff has failed to cite to even one example of a court striking down an anti-nepotism policy as violative of either the First or the Fourteenth Amendment. Although plaintiff is not required to produce a case squarely on point in order for this court to ultimately hold the policy in violation of the constitution, the lack of decisions in this area of the law indicate the novelty of its application. Accordingly, defendants' motion for summary judgment on the issue of qualified immunity for the mayor and city council in their individual capacities is **GRANTED.**

### IV. Substantive Due Process

▮▮▮▮ In *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), Justice Marshall, writing for the Court, used, ostensibly, an equal protection analysis to hold

---

**3.** Plaintiff attempts to cast the issue surrounding defendants' assertion of absolute immunity as whether the mayor and city council *would* have the authority to terminate plaintiff's employment. That issue, however, is not before the court in the context of plaintiff's claim. The only issue before the court is whether defendants are entitled to absolute immunity for actions *they have already taken,* which may have contributed to an injury suffered by plaintiff.

unconstitutional a Wisconsin statute that prevented certain state residents from marrying absent a court order. *Zablocki*, 434 U.S. at 391, 98 S.Ct. at 683. In beginning his evaluation of the statute, Justice Marshall wrote, "under the Equal Protection Clause, 'we must first determine what burden of justification the classification created thereby must meet, by looking to the nature of the classification and the individual interests affected.'" *Id.* at 383, 98 S.Ct. at 679 (quoting *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 253, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306 (1974)). In determining the applicable "burden of justification," Justice Marshall noted that the statute at issue directly infringed on the right to marry, a fundamental right under the United States Constitution. Therefore, the statute warranted a high level of scrutiny. *Id.* However, the Court stated that it did "not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny." *Id.* at 386, 98 S.Ct. at 681. Heightened scrutiny is only applicable when the statute *directly* interferes with the right to marry. *Id.* at 387 n. 12, 98 S.Ct. at 681 n. 12.[4] In defining the distinction between an indirect and a direct infringement on the right to marry, the Court distinguished the situation in *Zablocki* from the decision in *Califano v. Jobst*, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977), in which the Court upheld provisions of the Social Security Act providing for the termination of a "dependent child's benefits upon marriage to an individual not entitled to benefits under the Act." *Zablocki*, 434 U.S. at

387 n. 12, 98 S.Ct. at 681 n. 12. The Court noted that the provisions at issue in *Califano* "placed no direct legal obstacle in the path of persons desiring to get married ...," although the individuals were forced to give up a substantial economic benefit as a result of their decision to marry. *Id.*[5]; *see also P.O.P.S. v. Gardner*, 998 F.2d 764, 768 (9th Cir.1993) (noting that even though a regulation may discourage marriage, if it does not directly limit or restrict the right to marry, it is not subject to strict scrutiny).

 In *Califano*, the Court examined the Social Security Act provisions under a rational basis standard of review. *Califano*, 434 U.S. at 53–54, 98 S.Ct. at 99. In that context, the Court noted that the provisions were not "rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some people who did marry were burdened thereby." *Id.* at 54, 98 S.Ct. at 99; *see also Smith v. Shalala*, 5 F.3d 235, 239 (7th Cir.1993). Accordingly, governmental action is not subjected to strict scrutiny simply because the action may have an effect on the ability of certain individuals to marry. The governmental action must place a direct restraint on the individual's right to marry, not merely an incidental burden.

Although Justice Marshall used what he referred to as an equal protection analysis in *Zablocki*, the decisions arising subsequent to *Zablocki* have generally transformed Justice Marshall's analysis, or at least his identification of marriage as a fundamental right, into a substantive due process analysis.[6] *See gen-*

---

4. Justice Stewart points out in his concurrence, however, that there are already a number of direct restraints that the states are allowed to place on marriage. *Zablocki*, 434 U.S. at 392, 98 S.Ct. at 684. For example, the states may set a minimum age requirement on marriage or require a test for venereal disease. *Id.; see also Bradbury v. Wainwright*, 718 F.2d 1538, 1540 (11th Cir.1983) ("[T]he right to marry is not unfettered").

5. The provisions at issue in *Califano* were analyzed under the "principle of equality embodied in the Due Process Clause of the Fifth Amendment." *Califano*, 434 U.S. at 58, 98 S.Ct. at 102.

6. In a concurring opinion in *Zablocki*, Justice Stewart challenged Justice Marshall's analysis of the Wisconsin statute under the equal protection

clause. *Zablocki*, 434 U.S. at 391–96, 98 S.Ct. at 683–86. Justice Stewart wrote:

The Equal Protection Clause deals not with substantive rights or freedoms but with invidiously discriminatory classifications.... The problem in this case is not one of discriminatory classifications, but of unwarranted encroachment upon a constitutionally protected freedom. I think that the Wisconsin statute is unconstitutional because it exceeds the bounds of permissible state regulation of marriage, and invades the sphere of liberty protected by the Due Process Clause of the Fourteenth Amendment.

*Id.* at 391–92, 98 S.Ct. at 684.

*erally Washington v. Harper,* 494 U.S. 210, 224, 110 S.Ct. 1028, 1038, 108 L.Ed.2d 178 (1990); *Bowen v. Gilliard,* 483 U.S. 587, 603, 107 S.Ct. 3008, 3018, 97 L.Ed.2d 485 (1987); *Turner v. Safley,* 482 U.S. 78, 95, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64 (1987); *Taylor v. Ledbetter,* 818 F.2d 791, 794 (11th Cir.1987). The decisions in *Zablocki* and in *Califano* are particularly instructive in this regard as an aid in distinguishing between a direct and an indirect regulation of the right to marry, thus determining the applicable standard of review.

▉▉▉▉▉ In the case *sub judice,* the anti-nepotism policy of the City of Warner Robins places only an indirect burden on an employee's right to marry. An employee affected by the ordinance may indeed face a difficult economic decision, as did the plaintiff in *Califano;* however, absent a direct restraint on the right to marry, as existed in *Zablocki,* the governmental action need only survive a rational basis review. *See Bowen v. Gilliard,* 483 U.S. 587, 603, 107 S.Ct. 3008, 3018, 97 L.Ed.2d 485 (1987); *Lyng v. Castillo,* 477 U.S. 635, 638, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986); *Shalala,* 5 F.3d at 238–39; *see also Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1577 n. 14 (11th Cir. 1989) (" '[e]conomic and social legislation is presumed valid if it is rationally related to a legitimate state interest' "). Defendants have articulated several legitimate governmental purposes that the policy is intended to serve. These purposes include the prevention of conflicts of interest, the avoidance of the appearance or existence of favoritism, the avoidance of family conflicts, and the

prevention of sexual harassment in the workplace. After a careful review of the reasons set forth by defendants as the basis for the anti-nepotism policy, the court holds that as a matter of law the policy is rationally related to the achievement of these goals. Accordingly, defendants' motion for summary judgment as to plaintiff's substantive due process claim is **GRANTED.**[7]

## V. Procedural Due Process

▉▉▉▉ Plaintiff contends that defendants have violated her procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. A procedural due process analysis requires a two-part inquiry: (1) has the plaintiff been deprived of a protected property interest; and (2), if so, was due process accorded. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982); *see also Bailey v. Board of Commissioners,* 956 F.2d 1112, 1122 (11th Cir.1992) and *Woodruff v. United States,* 954 F.2d 634, 641 (11th Cir.1992).

▉▉▉▉ Plaintiff has failed to set forth any basis for establishing that she has been deprived of a protected property interest by the enactment of the anti-nepotism policy.[8] However, assuming *arguendo* that plaintiff was deprived of some property interest by the enactment of the policy, the legislative process through which the ordinance was enacted more than satisfies the mandate of due process. *See Logan,* 455 U.S. at 433, 102 S.Ct. at 1156 ("the legislative determination provides all the process that is due"). Plaintiff does not allege that the procedures used

7. Plaintiff's First Amendment claim regarding her right of association is necessarily included within the court's discussion of plaintiff's substantive due process claim. *Compare* Pl.'s Resp. to Defs.' Mot.Summ.J. part III(b)(1) *with* Pl.'s Supp.Br. part 1 & 2. Although the decisions of the Supreme Court are unclear as to whether the "right to marry" arises from a First Amendment association concern or a Fourteenth Amendment liberty interest, the analysis is the same. *See Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (Justice O'Connor, concurring, notes that the cases concerning this "right" defy categorical description) and *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). If the court determines that the "right to marry," a fundamental

right, is not directly implicated, the applicable standard of review is rational basis. *See Bowen v. Gilliard,* 483 U.S. 587, 603, 107 S.Ct. 3008, 3018, 97 L.Ed.2d 485 (1987) and *Lyng v. Castillo,* 477 U.S. 635, 638, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986). However, if the "right to marry" is directly implicated, *see Zablocki supra,* the court's standard is one of heightened scrutiny.

8. Although plaintiff may have a protected property interest in continued employment with the City of Warner Robins, this court is unable to prospectively determine if procedural due process *would* be accorded in the event plaintiff is dismissed.

by the city in amending its ordinances are constitutionally deficient. In addition, plaintiff has not alleged that the procedures were not properly followed. Accordingly, defendants' motion for summary judgment as to plaintiff's procedural due process claim is **GRANTED.**

## VI. Equal Protection

Plaintiff contends that the City of Warner Robins anti-nepotism policy violates the Equal Protection Clause of the Fourteenth Amendment both on its face and as applied.

### A. Facial Attack

The first step in equal protection analysis " 'is determining the proper standard of review.' " *American Booksellers v. Webb,* 919 F.2d 1493, 1509 (11th Cir.1990). If governmental action "does not affect a fundamental right or discriminate on the basis of a suspect classification, [the action is upheld] so long as it is rationally related to furthering a legitimate governmental interest." *Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567, 1574 (11th Cir.1992). As discussed above, the anti-nepotism policy of the City of Warner Robins affects the fundamental right to marry only in an indirect manner. Further, the policy does not implicate either a "suspect or a quasi-suspect classification such as race, gender, or alienage." *E & T Realty v. Strickland,* 830 F.2d 1107, 1113 n. 7 (11th Cir.1987). Therefore, the appropriate standard of review is rational basis. As previously discussed, however, the anti-nepotism policy of the City of Warner Robins survives analysis under the rational basis standard of review.

### B. As Applied

Plaintiff alleges that the anti-nepotism policy of the City of Warner Robins has been inconsistently applied in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendant has responded to this assertion by setting forth in great detail the various exceptions to the policy and why the individuals discussed by plaintiff fell within these exceptions. However, notwithstanding the arguments concerning the application of the various exceptions, " '[t]he unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.' " *Strickland,* 830 F.2d at 1112–1113 (quoting *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944)); *see also Brassell v. Baker,* 805 F.Supp. 925, 929 (M.D.Ala.1992). "Even arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause." *Strickland,* 830 F.2d at 1114. Plaintiff has set forth no evidence that would indicate that the alleged unequal application was in any way the result of purposeful discrimination.[9] Accordingly, defendants' motion for summary judgment on plaintiff's equal protection claims is **GRANTED.**

## CONCLUSION

Defendants' motion for summary judgment on the issue that plaintiff's cause of action is barred by the applicable statute of limitations is **DENIED.** Defendants' motion for summary judgment on the issue that the mayor and city council are entitled to absolute and qualified immunity in their individual capacities is **GRANTED.**

Further, the anti-nepotism policy of the City of Warner Robins survives constitutional scrutiny under the substantive and procedural due process guarantees of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. Although the Fourteenth Amendment provides significant protection to individuals, it does not give this court the unfettered authority to judge the wisdom of every ordinance and law enacted by a state or political

---

9. A plaintiff may show purposeful discrimination through circumstantial evidence. *Id.* at 1114 n. 9. "For example, purposeful discrimination can be indirectly proven by a 'stark' pattern of adverse impact on a particular group." *Id.* Plain-

tiff has failed to show a "stark" pattern of adverse impact on women. Merely alleging that the policy "could" have an adverse impact on women is insufficient.

**1214**

subdivision thereof. *See Sturgell v. Creasy,* 640 F.2d 843, 850 (6th Cir.1981).("the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy"). Accordingly, defendants' motion for summary judgment on plaintiff's constitutional claims is **GRANTED.**

**SO ORDERED.**