**STATE of Oklahoma ex rel. Garfield SETTLES, Plaintiff,**

v.

**BOARD OF EDUCATION OF DEPENDENT SCHOOL DISTRICT NO. D-38 OF McCURTAIN COUNTY, OKLAHOMA, and Manuel Coffman, Woodrow Endsley and D. G. Graham, as members of the Board of Education of Dependent School District No. D-38 of McCurtain County, Oklahoma, Defendants.**

**No. 40759.**

Supreme Court of Oklahoma.
Jan. 24, 1964.

Jim A. Rinehart, El Reno, Harry Johnson, Oklahoma City, for plaintiff.

Charles Nesbitt, Atty. Gen., W. J. Monroe, First Asst. Atty. Gen., Oklahoma City, amicus curiae.

JACKSON, Justice.

This is an original action in which the State of Oklahoma, er rel. Garfield Settles, plaintiff, asks this court to assume original jurisdiction for the purpose of issuing a writ of mandamus commanding the Board of Education of Dependent School District No. D–38 of McCurtain County, defendants, to pay his contractual salary as a teacher in said school district, pursuant to a contract dated July 1, 1963. Because of the importance of the public question presented the parties agree that this court should assume original jurisdiction.

Mr. Settles is a State Representative from McCurtain County as well as a public school teacher, and he served in the 1963 session of the Oklahoma Legislature. In 1963 the legislature of which Mr. Settles was a member appropriated $52,500,000 for the support and maintenance of the public schools of the state for the fiscal year ending June 30, 1964, said funds to be disbursed in accordance with existing law. It is agreed that of the total 1963–64 budget of School District No. D–38 ($10,-828.16), approximately 85% must come from state aid sources. About 93% of the total budget consists of funds for the salaries of Mr. Settles and the other teacher in the district.

On October 4, 1963, the Attorney General of Oklahoma issued his official opinion in which he held in effect, among other things, that no member of the legislature may receive compensation out of the general fund of any school district to which there has been apportioned by the State Board of Education out of appropriated funds any sum of money as state aid. This opinion was based upon the following portion of Article 5, Section 23, Oklahoma Constitution (concerning members of the legislature):

" * * * nor shall any member, during the term for which he shall have been elected, or within two years thereafter, be interested, directly or indirectly, in any contract with the State, or any county or other subdivision thereof, authorized by law passed during the term for which he shall have been elected."

Shortly after the opinion was issued, the Board of Education of School District No.

D–38 refused to honor a salary claim presented by Mr. Settles, who then began this action in this court.

The above-quoted clause of our Constitution has never been directly construed by this court, if indeed construction is necessary. Other clauses of the same section have been applied in Baskin v. State ex rel. Short, Attorney General, 107 Okl. 272, 232 P. 388, 40 A.L.R. 941; and Gragg v. Dudley, 143 Okl. 281, 289 P. 254.

Several of the states have generally similar provisions in their constitutions, but none is identical to the Oklahoma provision quoted. The one most nearly like ours is found in the South Dakota Constitution of 1889. It is identical to the above-quoted provision, except that the period of proscription is limited to one year after the term of the legislator, and the words "or other subdivision" are omitted. In applying this clause in Norbeck and Nicholson Co. v. State, 32 S.D. 189, 142 N.W. 847, the Supreme Court of South Dakota said:

"A member of the state Legislature, by virtue of his office, stands in a fiduciary and trust relation towards the state; in other words, he is the confidential agent of the state for the purpose of appropriating the state's money in payment of the lawful contractual obligations of the state, and it seems to be almost universally held that it is against sound public policy to permit such an agent, or any agent occupying a like position, to himself be directly or indirectly interested in any contract with the state or other municipality, during the time of the existence of such trust and confidential relationship. * * *"

The above language was quoted with approval by this court in Baskin v. State ex rel. Short, Attorney General, supra.

In answer to the opinion of the Attorney General, plaintiff says that his contract to teach school (dated July 1, 1963, for the 1963–64 school year) was not authorized by a law passed during his term as a legislator, and that the quoted constitutional provision is therefore not applicable.

In this connection, plaintiff invites our attention to the fact that a section of the School Code of 1949 (now codified as 70 O.S.1961 § 6–1) is the last enactment of our legislature specifically mentioning the power of the school board to "* * * employ and contract in writing with qualified teachers for and in the name of the district". He also argues that his contract is not in terms made contingent upon a legislative appropriation of funds for the payment of his salary, and, upon its face, purports to be binding without regard to whether such funds are made available.

However, for reasons set out below, we do not agree that the 1949 Legislature, instead of the 1963 Legislature, authorized the school board and Mr. Settles to enter into a contract on July 1, 1963.

Article 10, Section 26, Oklahoma Constitution, provides in part as follows:

"No * * * school district * * * shall be allowed to become indebted, *in any manner, or for any purpose,* to an amount exceeding, in any year, the income and revenue provided for such year * * *." (Emphasis supplied.)

In Consolidated School Dist. No. 6, Dewey County, v. Panther Oil and Grease Mfg. Co., 197 Okl. 66, 168 P.2d 613, this court held:

"The intent and plain purpose of section 26, article 10, of the Constitution is to require a municipality to carry all its corporate operations upon a cash or pay as you go plan. The revenue of each year must take care of the expenditures of such year and *any liability sought to be incurred by contract,* express or implied, executed or executory, *in excess of such current revenue* in hand, or legally levied, *is void* * * *." (Emphasis supplied.)

70 O.S.1961 § 18–4(1) (c) (6) provides as follows:

"Provided further, that in the event legislative appropriations are insuffi-

cient to finance the minimum salary program, school districts or any individual shall not be liable for unpaid salary obligations resulting therefrom."

■ Under the above constitutional and statutory provisions, it is evident that Mr. Settles' contract with the school district, for an amount far in excess of all of the funds available locally to the school district, would have been void and unenforceable as to such excess, if the 1963 legislature, of which he was a member, had not made state aid funds available with which to pay his salary. The fact that the above limitations were not physically written into the contract is immaterial. It is too well established to require citation of authority that the applicable law is a part of every contract. For the same reason, it is immaterial that the legislative appropriation was made *before* Mr. Settles' contract with the school district was signed. By operation of law, such limitations are still a part of the contract. If it should develop that the $52,500,000 appropriated is not enough to pay all of the public school expenses contemplated, the contract would still be unenforceable, on a pro rata basis, to the extent of such deficiency. As a matter of fact, it appears that this very thing might have happened near the close of the 1962–63 school year (during which Mr. Settles also taught school for this district) had not the 1963 Legislature, of which he was a member, included in the $52,500,000 above noted, an emergency appropriation of $3,000,000 payable during the 1962–63 school year. Session Laws, 1963, page 261.

■■ We therefore hold that the contract dated July 1, 1963, between Mr. Settles and the school district was a contract "authorized by law passed during the term" for which Mr. Settles was elected to the legislature. It was the act of the 1963 Legislature which made his contract enforceable and binding.

We have noted the suggestion of plaintiff that the 1963 appropriation of the legislature was made to the State Board of Education (to be thereafter "apportioned" to the various school districts) and not direct to School District No. D–38. The argument is that because of this intermediate link in the chain between the legislature and the school district, the funds concerned have "lost their identity" as a legislative appropriation. We think the distinction sought to be made is tenuous and technical, and it does not change our conclusion that in making available to the school district state aid funds with which to pay Mr. Settles' salary, thus giving force and effect to his contract, the 1963 Legislature in fact authorized the contract sought to be enforced, within the meaning of Article 5, Section 23, of our Constitution.

It is not denied that a school district is a "subdivision" within the meaning of Section 23, and it is not denied that the contract was made during the term for which Mr. Settles was elected to the legislature. We therefore further hold that such contract is prohibited by Section 23, the section relied upon by the Attorney General in his official opinion.

In fairness to Mr. Settles, it must be said that his faithful and efficient performance of his duties as a legislator and a public school teacher is not questioned in any way.

In view of the conclusion reached above, it is unnecessary to consider a second proposition advanced by the Attorney General to the general effect that Mr. Settles' dual capacity as a legislator and a public school teacher constitutes a violation of the basic principle of the separation of the powers of government.

From the pleadings and briefs of the parties we are told that the practice of public school teachers, serving as Legislators at the same time, has existed since statehood. This practice did not cease upon the advent of state aid and the minimum school program. Apparently the Legislature in enacting school laws, and the Department of Education in administering the school program, have found no relationship between this practice and the provisions of Art. 5, Sec. 23, Const. In 1955 the Legislature en-

acted 70 O.S.Supp.1955, Sec. 6–1(e), now 70 O.S.1961 § 6–1(e), wherein it is provided that if prior to April 10th, a board of education has not entered into a written contract with a regularly employed teacher or notified him in writing by registered mail that he will not be employed for the ensuing fiscal year, and if, by April 25th, such teacher has not notified the board of education in writing by registered mail that he does not desire to be re-employed on a continuing contract basis such employment and continuing contract shall be binding on the teacher and the school district. No provision for disqualifying a teacher elected to the Legislature was made.

 While we are not bound to follow legislative and departmental constructions of constitutional provisions, (Glasco v. State Election Board, 121 Okl. 119, 248 P. 642; American Druggists' Fire Ins. Co. of Cincinnati, Ohio v. State Ins. Board, 184 Okl. 66, 84 P.2d 614), justice will not permit us to ignore such interpretations to the detriment of those who may have relied thereon. Accordingly our order must render justice as between the parties, and it should avoid confusion and disorder in those districts which have employed Legislator-teachers during the current school term. A writ of mandamus may be granted, or withheld, to avoid confusion and disorder. Board of Education of City of Guthrie v. Excise Board, 86 Okl. 24, 206 P. 517.

 In the sixth paragraph of the syllabus in State ex rel. St. Louis-San Francisco R. Co. v. Boyett, 183 Okl. 49, 80 P.2d 201, we held:

"In awarding or denying writs of mandamus, courts exercise judicial discretion and are governed by what seems necessary and proper to be done, in the particular instance, for the attainment of justice, and in the exercise of such discretion may, in view of the serious public consequences attendant upon the issuance of the writ, refuse the same in a proper case, though the petitioner would otherwise have a clear legal right for which mandamus is an appropriate remedy."

If we correctly understand, there are twelve or more Legislators now serving as public school teachers during the current school term. Whether these teachers could be immediately replaced, if removed, is not revealed by the record.

██ Under the facts here presented we have concluded that justice, and the avoidance of confusion and disorder, requires us to grant a writ of mandamus for and during the accomplishment of the duties of the parties under their written contract entered into on July 1, 1963.

██ In granting complete relief, as we may do in an equity case, McKay et al. v. Kelly, 130 Okl. 62, 264 P. 814, we have concluded that under the rule expressed in Wade v. Board of Com'rs of Harmon County, 161 Okl. 245, 17 P.2d 690, the parties may complete the duties required of each, as set forth in their contract of July 1, 1963, without the imposition of penalties as set forth in 62 O.S.1961 §§ 372 and 373.

It is our further conclusion that the plaintiff should not be disqualified, under the situation here presented, from seeking employment in any school in the public school system of the state for the school year 1964–1965 and subsequent years because of membership in the Twenty-Ninth Legislature (1963), but if he elects to continue serving in his profession as public school teacher it should be understood that subsequent appropriations for state aid by the Legislature, of which he is a member, will, for reasons set forth in this opinion invalidate any subsequent school teaching contract of his which depends upon state aid for its validity.

It is so ordered.