In the Matter of SUSAN SPENCER, an Infant, by DONALD SPENCER, Her Parent, Respondent, v. BOARD OF EDUCATION OF THE CITY OF SCHENECTADY, Appellant.

Third Department, July 25, 1972.

*Simeo J. Gallo* for appellant.

*Robert E. Lynch* for respondent.

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon, Ruth Kessler Toch* and *Grace Banoff* of counsel), in his statutory capacity under section 71 of the Executive Law.

*Per Curiam.* This is an appeal from a judgment of the Supreme Court at Special Term, entered June 15, 1972 in Schenectady County, in a proceeding pursuant to article 78 of the CPLR, which granted respondent's request for an order requiring appellant to conduct a new election.

Respondent, aged 18, filed a petition for nomination as a candidate for election to fill a seat on the Schenectady Board of Education. The petition was accepted as sufficient and timely filed and her name was thereupon placed on the ballot by the appellant board for the election to be held on May 2, 1972. Because of an opinion of the Attorney-General, received by appellant on May 1, 1972, which declared that no person may hold the office of member of a board of education who has not attained the age of 21 years, appellant ordered that the lever over the name of respondent on the ballot be locked. This decision was not reached by the board until the early hours of May 2, 1972 and respondent was immediately notified by phone. Subsequent to the day of the election respondent instituted this article 78 proceeding seeking to have the election invalidated and a new one ordered.

Special Term concluded, among other things, that subdivision 2 of section 2608 of the Education Law failed to meet the due process requirements of the Fourteenth Amendment of the United States Constitution; that subdivision 1 of section 2609 of such law makes section 145 of the Election Law applicable

to a school board election and appellant's failure to comply with it rendered its determination unreasonable and in violation of respondent's rights; and that due to the effect of the Twenty-Sixth Amendment to the United States Constitution, respondent was a qualified candidate for the office involved. The court, therefore, granted respondent the relief sought. We arrive at a different conclusion.

Simply stated, the primary issue to be resolved is whether respondent was eligible to sit on the Schenectady Board of Education as the law existed on May 2, 1972. The pertinent fact is respondent's age which is conceded to be 18. None of the safeguards required by the Fourteenth Amendment could alter this fact. '' The extent to which procedural due process must be afforded * * * is influenced by the extent to which [one] may be ' condemned to suffer grievous loss,' '' (*Goldberg* v. *Kelly*, 397 U. S. 254, 262–263). The '' right '' of respondent which stood to be lost involved only a question of law, i.e., her eligibility to hold the particular office. A hearing could produce nothing to change the basic and controlling fact of respondent's age. Consequently, under the circumstances, we find no denial of due process for failure to afford notice and an opportunity to be heard.

We disagree also with Special Term's conclusion that section 145 of the Election Law is applicable. That statute deals with the sufficiency of nominating petitions and certificates of designation, and has no application to a candidate's substantive qualifications to hold office.

By the Twenty-Sixth Amendment to the Federal Constitution, 18-year-olds were granted the right to vote. At the time of the passage of this amendment, and at the present time, subdivision 7 of section 2502 of the Education Law provided: '' No person shall be eligible to the office of member of the board of education who is not a qualified voter ''. Subdivision 2 of section 2603 of such law provided that one has to be 21 years of age to be entitled to vote at a school election. There is no doubt that this latter statutory provision has been superseded by the Twenty-Sixth Amendment. However, since members of the board of education are public officers (see *Metzger* v. *Swift*, 258 N. Y. 440), it is also necessary to examine section 3 of the Public Officers Law which governs the qualifications for public officers and provides: '' No person shall be capable of holding a civil office who shall not, at the time he shall be chosen thereto, have attained the age of twenty-one years ''. We recognize that there was a conflict at the time of the election between the Education

Law and the Public Officers Law due to the passage of the Twenty-Sixth Amendment. We find no need, however, to apply one statute to the exclusion of the other since it is the intention of the Legislature at the time the various statutes took effect that controls. (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 93; *Kelly* v. *Yannotti,* 4 N Y 2d 603, 606.) Section 3 of the Public Officers Law as of its effective date required an office holder to be " of full age " and was later changed to the age of 21 years. (Public Officers Law, § 3, amd. by L. 1966, ch. 10.) Subdivision 7 of section 2502 of the Education Law, when it became effective, provided merely that a person was not eligible to the office of member of the board of education unless he was a qualified voter. (Education Law, § 2502, subd. 7, added by L. 1950, ch. 762, § 3.) It is significant that this statute did not provide that a qualified voter was eligible to hold such office, but rather provided that failure to qualify as a voter was the basis of ineligibility. Subdivision 2 of section 2603, on the other hand, required that in order to vote at a school election one had to be 21 years of age (Education Law of 1910, § 210, amd. by L. 1917, ch. 791). It is our opinion that the pertinent sections of the Public Officers Law and the Education Law at the time of their effective dates were consistent, and the Legislature clearly intended at such time that a member of the board of education must be 21 years of age. The Twenty-Sixth Amendment did not effect a change in the Public Officers Law, nor did the Education Law become thereby the exclusive authority for the required age to hold such office. The Twenty-Sixth Amendment conferred only the right to vote on the 18-year-olds, and extended no concurrent right to hold office. Unlike the refusal of the courts to deny the right to hold office because of race, color or sex (Fifteenth and Nineteenth Amendments of the Federal Constitution), there is a rational basis for denying that right because of age. The fact that the Legislature has recently reduced the age requirement of section 3 of the Public Officers Law to 18 provides little solace to respondent since we are governed by the law as it existed at the time of the school board election on May 2, 1972. It is our conclusion that respondent was required at such time to be 21 years of age in order to hold the office to which she aspired to be elected.

The judgment should be reversed, on the law and the facts, and petition dismissed.

KANE, J. (dissenting). The school board election should be invalidated and a new one ordered. A serious question is raised by the board ordering respondent's name off the ballot late in

the evening of May 1, only hours before the election was to take place. When she filed her nominating petitions on April 12, the board accepted them and she was placed on the ballot as a qualified candidate. This obviously was an error of law by the board. A vigorous campaign was conducted by the respondent and she attracted the support of many voters in the city school district. Had it not been for the candidacy of respondent, other eligible residents of the district may have run for the office or, in any event, supported the candidacy of another person had the respondent not qualified as a candidate. In this respect the votes of the supporters of respondent, and indeed her own vote, presumably for herself, were nullified by the error of the board. The case of *People ex rel. Hirsh* v. *Wood* (148 N. Y. 142) treated the question of mistakes by election officers. '' We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them.'' (pp. 146–147.)

The Board of Education does not deny knowledge of the age of respondent at the time she filed her petitions. A good deal of newspaper publicity attended her candidacy as well as at least one other in the capital district area. The failure of the board to reckon with the age qualification of respondent at the time she filed the petition, or very soon thereafter, induced the change of position of the respondent and her supporters who, on the eve of the election, would be deprived of their popular will by the unilateral action of the board. The board's reliance upon an opinion of the Attorney-General does not change the effect of the board's action since that opinion merely held that any person under the age of 21 could not be a member of a Board of Education. This permitted of the fair and more logical approach of keeping respondent's name on the ballot and after the election raising the qualification issue, if she won the election. A quo warranto proceeding would be the proper remedy subsequent to the orderly elective process and, if removed, the candidate receiving the next highest votes would be entitled to the position.

Another consideration is one of due process to respondent herself. Notwithstanding the concession of her age, the acceptance of her candidacy on April 12 demonstrated that the Twenty-Sixth Amendment had created a real issue as to the concomitant lowering of the age to hold public office. Although

this was clearly a question of law, the respondent should have had an opportunity to present her case even if it resulted in inducing the board to leave her name on the ballot and deal with the question of age qualification subsequent to the election. To say now that it is clear that there has been no denial of due process is to negate the error by the board and the existence of a real issue as to her eligibility at that time. In any event, the unilateral and late action by the board clearly affected an apparent right that existed and should have been preceded by notice and an opportunity to be heard. An opportunity to be heard is the fundamental requisite of due process of law (*Goldberg* v. *Kelly,* 397 U. S. 254, 268).

The judgment should be modified to invalidate the election or order a new election.

GREENBLOTT, J. P., SWEENEY and SIMONS, JJ., concur in *Per Curiam* opinion; KANE, J., dissents and votes to modify in a separate opinion; COOKE, J., not voting.

Judgment reversed, on the law and the facts, and petition dismissed, without costs.