Dr. Lynn A. CAMPBELL, et al.,
Plaintiffs, Appellants,

v.

John F. LEHMAN, etc., et al.,
Defendants, Appellees.

No. 83–1467.

United States Court of Appeals,
First Circuit.

Submitted Nov. 7, 1983.

Decided March 2, 1984.

Carlos Bobonis Gonzalez, Santurce, P.R., and Bobonis, Bobonis & Rodriguez Poventud, Santurce, P.R., on brief for plaintiffs, appellants.

Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., and Ronald R. Winfrey, Lieutenant Commander, Judge Advocate General's Corps, United States Navy, Washington, D.C., on brief for defendants, appellees.

Before CAMPBELL, Chief Judge, ROSENN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

ROSENN, Senior Circuit Judge.

Plaintiffs Lynn Campbell and Lisardo Batan brought this action challenging regulations regarding eligibility for school board membership in a school system for children of members of the armed forces and other federal employees in Puerto Rico. A new regulation, promulgated by the Commander of the Naval Forces in the Caribbean, provides that "[n]o individual related by blood or marriage to an employee of the [school system] may be a candidate for or a member of the School Board." Commander U.S. Naval Forces Caribbean (March 1, 1983) Instruction 1755.2C. One effect of the new rule was to prohibit Campbell and Batan, members of the school board, from running for reelection.

---

* Of the Third Circuit, sitting by designation.

Campbell and Batan brought suit in the United States District Court for the District of Puerto Rico against the United States Secretary of the Navy and the United States Secretary of Education attacking the regulations on several grounds. The district court held that the Navy's regulations were acceptable interim rules pending the promulgation of new regulations by the Department of Education and dismissed plaintiffs' petition for injunctive relief and a declaratory judgment. Campbell and Batan appeal. We affirm.

Under federal law, the Commissioner (now Secretary) of Education is directed to provide free public education for children residing on federal property or whose parents are employed on federal property, if there are no state tax revenues to pay for the education or if it is the judgment of the Commissioner that the local education agency is unable to provide suitable free public education. 20 U.S.C. § 241(a) (1982). Schools established under this provision, Act of Sept. 30, 1950, ch. 1124, Pub.L. No. 81–874, § 6, 64 Stat. 1100, 1107, are referred to as "section 6 schools." Under section 8(a) of the Act, the Commissioner was "authorized, pursuant to proper agreement with any other Federal department or agency, to utilize the services and facilities of such department or agency, and, when he deems it necessary or appropriate, to delegate to any officer or employee thereof the function under section 6 of making arrangements for providing free public education."

Many section 6 schools are located on or near military bases, and frequently the operation of the schools was delegated to the individual branch of the armed services that ran the military installation. *See* H.R.Rep. No. 1137, 95th Cong., 2d Sess. 107, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4971, 5076–77. The Antilles Consolidated School System (ACSS), a section 6 school system, comprises all the elementary, middle, and high schools located at certain Puerto Rico military installations.

Parents and teachers of children in the ACSS were dissatisfied with the operation of the schools by the armed forces. In response to their concerns, Congress passed the following amendment in 1978:

The Commissioner [of Education] shall ensure the establishment of an elective school board in schools assisted under this section. Such school board shall be composed of a minimum of three members, elected by the parents of students in attendance at such school. The Commissioner shall, by regulation, establish procedures for carrying out such school board elections as provided in this subsection.

Education Amendments of 1978, Pub.L. No. 95–561, § 1009(d), 92 Stat. 2143, 2309 (codified at 20 U.S.C. § 241(g) (1982)). The House Report specifically mentioned the problem in the Antilles Consolidated School System in Puerto Rico, where "[u]nilateral authority rest[ed] with the admiral," and noted that the proposed bill authorized the Commissioner of Education to establish procedures for the election of school boards. *See* H.R.Rep. No. 1137, 95th Cong., 2d Sess. 107, *reprinted in* 1978 U.S. Code Cong. & Ad.News 4971, 5077–78.

In 1979, pursuant to congressional direction, the Secretary of Education gave notice of a proposed rule in the federal register mandating procedures for the establishment of elected school boards in section 6 schools. 44 Fed.Reg. 38,223 (proposed June 29, 1979). For reasons unexplained, the Secretary never adopted the proposed rule. In 1981, Congress passed an appropriations bill that reaffirmed the Department of Education's authority over section 6 schools:

Funds appropriated to the Department of Defense shall be available to the Secretary of Defense for payments and arrangements of the kind that may be made by the Secretary of Education under section 6 .... The Secretary of Defense shall delegate to the Secretary of Education responsibility for the conduct of programs with funds so available.

Omnibus Education Reconciliation Act of 1981, Pub.L. No. 97–35, Title V, § 505(c)(2)–(3), 95 Stat. 441, 443.

Notwithstanding Congress's express directives, the Department of Education nev-

er issued rules to establish an elective school board. Faced with the Secretary of Education's inaction, in March 1980 the Commander of the Naval Forces in the Caribbean promulgated Instruction 1755.2B, which sets forth a detailed procedure for the establishment of an ACSS school board. The instruction included eligibility requirements for election to the school board, mandating that "[n]o individual employed by or receiving any employment compensation from the ACSS may be a member of the School Board, except for the School Superintendent." Under Instruction 1755.2B, the parents of ACSS students elected three consecutive school boards, the first of which took office in July 1980. The term of the last elected Board expired under this instruction in July 1983.

On March 1, 1983, the Navy Commander issued Instruction 1755.2C. Instruction 1755.2C modified Instruction 1755.2B and included the following restriction: "No individual related by blood or marriage to an employee of the ACSS may be a candidate for or a member of the School Board." At the time that Instruction 1755.2C was promulgated, Campbell and Batán had been elected members of the school board. Each is the spouse of a member of the ACSS staff (and a parent of ACSS students). Thus, the new regulation precluded Campbell and Batan from running for reelection.

In the action instituted by Campbell and Batán, they claimed that the anti-nepotism rule is arbitrary and unreasonable. The court ruled that the plaintiffs were estopped from challenging the rules and that, in any event, the Navy's regulations were reasonable interim measures. We differ with the court's holding that the plaintiffs were estopped from challenging the regulations, but we agree that the instructions constituted an acceptable interim response to the Department of Education's failure to act.

The district court held that "having reaped the benefits derived from these regulations by having full participation in the election procedure and by being elected Board members, [the plaintiffs] cannot now complain of the validity of the regulations or of the lack of authority on the part of the Commander to issue them." The court cited two cases to support its statement, *Federal Power Commission v. Colorado Interstate Gas Co.*, 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955), and *Kaneb Services v. Federal Savings & Loan Insurance Corp.*, 650 F.2d 78 (5th Cir.1981). Neither case is applicable.

■ In each of the above cases, the plaintiff needed agency approval to complete a merger. The approval was granted, subject to conditions. The plaintiff did not seek review of the conditions, but went through with the mergers and accepted the benefits of the rulings. The plaintiff then brought suit challenging the authority of the agency to impose the conditions. In this case, the Navy never imposed the anti-nepotism rule as a prior condition to accepting a benefit enjoyed by the plaintiffs. This is not a situation where Campbell and Batán obtained permission from the Navy based on certain conditions to seek school board office and then, having been elected, renounced the conditions upon which the Navy relied. The plaintiffs are not precluded from challenging the Navy's authority to promulgate regulations merely because they assumed elective office under one of these regulations. We hold that Campbell and Batán were not estopped from challenging the Navy's authority to issue the anti-nepotism rule.

■ The next question is whether the Navy indeed had the authority to promulgate the instructions. Prior to congressional action in 1978, a naval officer ran the school system. The 1978 law explicitly instructed the Department of Education to establish a school board in section 6 schools and to promulgate regulations. The Department of Education issued proposed regulations, but it never implemented them. Congress, by its 1981 appropriations measure, made funds available for the Secretary of Defense for section 6 schools and directed the Secretary of Defense to delegate to the Secretary of Education responsibility for the conduct of programs with such funds. The Navy, in charge of allocating the ACSS funds, concluded that it should also issue instructions for school board elec-

tions because of the Department of Education's failure to adopt regulations. The Navy attempted to fill the vacuum created by the lapse of the Secretary of Education and to carry out congressional intent by creating an independent, elected school board.

The plaintiffs plausibly argue that administrative inaction by one agency cannot be invoked as a source of authority for another agency's power to formulate regulations. The Navy relies on a memorandum of understanding between the Department of Defense and the Department of Education and asserts that it provides the Navy with authority to issue the regulations. This memorandum arrangement, however, delegates solely fiscal management and reserves the responsibility for the conduct of school programs in the Department of Education. Nevertheless, the district court found that in the absence of action by the Department of Education, the Navy Commander acted in good faith by issuing the instructions.

Congress has expressed its will that the Secretary of Education issue regulations creating and governing the election of a school board in the ACSS. Congress specifically placed the responsibility to promulgate these rules with the Department of Education, and not with the Navy. The district court found that the Navy's "instructions relative to election procedures were interim regulations issued by the Commander in a good faith effort to fill the gap created by the inaction of the Department of Education and were not meant to substitute regulations which could be put into effect by the latter." These instructions, only temporary in effect, provide continuity and stability for the school system until regulations are promulgated by the Secretary of Education as required by law. We assume that the Secretary will act promptly to meet his congressional responsibility.[1]

Campbell and Batán also contend that even if the Navy had the authority to issue interim regulations, the anti-nepotism rule is arbitrary and unreasonable and therefore invalid. A regulation designed to prevent potential conflicts of interest in a school board-employee relationship is not unreasonable. *See Keckeisen v. Independent School District 612,* 509 F.2d 1062, 1066 (8th Cir.), *cert. denied,* 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51 (1975). The district court in this case made a finding of fact that a blood or marriage relationship between a member of the school board and a member of the staff of the ACSS would create "a great potential" for conflicts of interest due to the nature of the school board's duties and oversight responsibilities. We do not believe that this finding is clearly erroneous.

Under the circumstances of this case, we see no error in the district court's denial of injunctive and declaratory relief. The Clerk is hereby directed to send a copy of this decision to the Secretary of Education.

Affirmed.

---

1. In the event the Secretary of Education fails to act, the plaintiffs may seek appropriate relief. Campbell and Batán have brought a mandamus action to compel the Department of Education to issue regulations. Apparently at the district court's direction, the parties went to trial only on the plaintiffs' claims for relief against the Navy.